The evidence in this case does not, in sum, support defendant's claim that it is entitled to summary judgment on the basis that it acted reasonably. See Dobrich v. General Dynamics, 106 F.Supp.2d 386, 394 (D.Conn. 2000) ("The promptness and adequacy of an employer's response is generally a question of fact for the jury."); Dortz at 153 (whether employer "did or did not take prompt and effective remedial action . . . is a question properly left for trial.").

C.  **DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR RETALIATION**

Defendant argues that it is entitled to summary judgment on plaintiff's claims for retaliation under federal and state law on the basis that plaintiff cannot establish that she suffered "an adverse employment action" or that any adverse employment action was causally connected to plaintiff's complaints of harassment. See Def.Mem. at 24. Defendant argues that "[p]laintiff's complaint is devoid of facts sufficient to support the inference of an atmosphere so intolerable as to compel a reasonable person to resign" and, therefore, plaintiff cannot prove constructive discharge, and that management's "remedial suggestions" cannot be viewed as retaliatory. Id. at 24-26. Contrary to defendant's argument, abundant evidence supports plaintiff's claim that she suffered retaliation including that: 1) DAI knew that plaintiff's coworkers continued to harass her following her complaints to management and became even more hostile, threatening and abusive toward plaintiff in retaliation for her attempts to correct the situation, yet took no action to stop the misconduct, 2) plaintiff's work environment became intolerable due to management's refusal to take any corrective action against the harassers and plaintiff, therefore, had no option but to resign her employment, having been constructively discharged, and 3) the only "remedial

---

109 ("it would make matters worse and I couldn't handle anymore problems"), 114-15.

suggestions" management offered to plaintiff – continue under the same circumstances, accept a demotion or resign her employment – constituted adverse employment action.

In order to establish a *prima facie* case of retaliation in violation of Title VII, plaintiff must show:

> (1) participation in a protected activity that is known to defendant, (2) an employment decision or action disadvantaging plaintiff, and (3) a causal connection between the protected activity and the adverse decision.

Richardson v. New York State Department of Correctional Service, 180 F.3d 426, 443 (2d Cir. 1999).[38] A plaintiff suffers "adverse employment action" if she "endures a materially adverse change in the terms and conditions of employment." Id. at 446 (quotations omitted). "Because there are no bright-line rules as to which employment actions meet the threshold for 'adverse,' courts must make this determination on a case-by-case basis." Wilburn v. Fleet Financial Group, Inc., 170 F.Supp.2d 219, 237 (D.Conn. 2001) (citing Richardson at 446).

The evidence in this case establishes that plaintiff suffered "adverse employment action" in retaliation for the complaints she made to management and to her coworkers about their offensive and harassing conduct. As stated previously and as set forth in detail in plaintiff's Statement of Facts *supra*, management took no action in response to plaintiff's complaints and rather repeatedly instructed plaintiff to "relax" and "ignore" the behavior, indicating that it tolerated or even condoned the misconduct. As a result, plaintiff's coworkers continued to

---

[38] Defendant does not argue that plaintiff cannot establish the first element – that she engaged in a protected activity – but does note in a footnote that "it is unclear that plaintiff's pre-January 2000 statements to her supervisor and Human Resources constituted 'complaints,'" claiming that "plaintiff's statements regarding her subordinates were made in conclusory terms, without provision of specific misconduct and without names." See Def.Mem. at 24, n.17. Plaintiff does not address defendant's comment here because defendant cites no legal authority in support, but refers to Section III.B.3.a. *supra* concerning the adequacy of her complaints.

subject her to harassment and, in retaliation for plaintiff's complaints, became hostile, abusive and threatening toward plaintiff. These circumstances establish that plaintiff suffered "adverse employment action." See Richardson at 446 ("An employer subjects an employee to a materially adverse change in the terms and conditions of her employment if it "knew about but failed to take action to abate retaliatory harassment inflicted by co-workers."). See also Wilburn at 237; Ericson v. City of Meriden, 205 F.R.D. 75, 79 (D.Conn. 2001);[39] Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264-65 (10th Cir. 1998) (holding that "co-worker hostility or retaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim" where supervisory or management personnel "know about the harassment and acquiesce in it in such a manner as to condone and encourage the co-workers' actions."); Knox v. State of Indiana, 93 F.3d 1327, 1334 (7th Cir. 1996) (recognizing that "permitting [plaintiff's] fellow employees to punish her for invoking her rights under Title VII" constitutes a form of retaliation).

In addition, the evidence shows that plaintiff suffered an adverse employment action in that she was constructively discharged. See Fitzgerald v. Henderson, 251 F.3d 345, 357 (2d Cir. 2001) (adverse employment actions include discharge from employment whether by actual

---

[39] Defendant cites Ericson representing that, in that case, "transfer of an employee away from an uncongenial work environment which she had created was clearly not an adverse employment action but rather an attempt to help ease plaintiff's unhappiness and was done at her own request," suggesting the circumstances in Ericson are similar to those in the present case and, once again, suggesting that plaintiff in this case was responsible for the problems in the aisle. Def.Mem. at 26. Ericson is completely inapposite. In Ericson, the court specifically found based on the evidence that the plaintiff, who was not complaining of sexual harassment, but rather of retaliation by her coworkers for expressing that they should not have been watching a video while "on the clock," *voluntarily requested* a transfer to another position of equal pay and benefits after her coworkers became angry with her and, as a result, found that plaintiff had not suffered any adverse employment action. See Ericson at 78.

41

termination of employment by the employer or "constructive discharge"); Wilburn at 238, n.49 (constructive discharge qualifies as adverse employment action); Downing v. West Haven Board of Ed., 162 F.Supp.2d 19, 29 (D.Conn. 2001) (same).

As stated in Wilburn,

> [c]onstructive discharge of an employee occurs where an employer, rather than directly discharging an individual, *intentionally* creates an intolerable work atmosphere that forces an employee to quit voluntarily. To find that an employee was constructively discharged, the trier of fact 'must be satisfied that the . . . working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.

Wilburn at 238 (emphasis in original). See also Colter v. Yale University, 2000 WL 559023, *3 (D.Conn., Mar. 24, 2000) (unpublished decisions are attached hereto at Exhibit 34).[40] Evidence in support of a claim for constructive discharge must be viewed as a whole. See Chertkova v. Connecticut General Life Insurance Co., 92 F.3d 81, 90 (2d Cir. 1996)], and, while certain factors standing alone may be legally insufficient to demonstrate a constructive discharge,

> the effect of a number of adverse actions in the workplace is cumulative. A constructive discharge occurs if a reasonable person subjected to the same conditions as plaintiff would have felt compelled to step down.

Id. (holding that "[b]ecause a reasonable person encounters life's circumstances cumulatively and not individually, it was error [for the district court] to treat the various conditions as separate and distinct rather than additive" in reversing summary judgment).

In this case, management failed to take any action whatsoever to stop the constant hostile, abusive and threatening behavior to which plaintiff was subjected by her coworkers and, instead, repeatedly instructed plaintiff to "relax" and "ignore" the behavior. The hostile work

---

[40] "The conditions are judged from the perspective of a reasonable person in plaintiff's position." Id.

42

environment caused plaintiff to suffer severe emotional distress that resulted in her hospitalization for an anxiety attack and, within a month's time, two short term disability leaves because of work-related stress. Management was aware that plaintiff was suffering extreme distress but did nothing to correct the hostile environment that was causing her distress. When it became clear to plaintiff that management was not going to take any action to correct the situation and that she would not be able to correct it on her own, plaintiff resigned her employment.

This evidence at the very least creates an issue of material fact concerning whether plaintiff was constructively discharged and, thus, whether plaintiff suffered adverse employment action. See, e.g., Van Steenburgh v. Rival Company, 171 F.3d 1155, 1160 (8th Cir. 1999) (evidence was sufficient to establish constructive discharge where employer failed to remedy harassment despite repeated complaints indicating that plaintiff had a "lack of recourse against the harassment within [the company's] organization."); Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 574-75 (8th Cir. 1997) ("reasonable jury could find that the continuing harassment and management's indifference rendered [plaintiff's] working conditions intolerable and forced her to quit" even where management offered plaintiff other positions at exit interview because management "made no suggestion that [it] would investigate her complaints or try to ameliorate the situation or consider disciplinary action.").

Finally, defendant's so-called "remedial suggestions" -- that plaintiff 1) continue to supervise the women in her aisle under the same circumstances, 2) resign her position as supervisor and, therefore, have less responsibility, or 3) voluntarily terminate her employment -- offered to plaintiff in January 2000 after she had suffered months of hostile and abusive

43

behavior, constitute adverse employment action. The first and third options – continue to work in an increasingly hostile and retaliatory environment or be constructively discharged, respectively – constitute "adverse employment action," as set forth above. The second option, demotion to a position involving lesser job responsibilities, also constitutes adverse employment action, *even when* an employer agrees to maintain the same level of pay and benefits. See Rodriguez v. Board of Education, 620 F.2d 362, 364 (2d Cir. 1980) (reversing dismissal of sex discrimination case by district court on basis that transfer to different teaching position "entailed no loss of salary or other monetary benefits" where plaintiff presented proof that it was, "in effect, a demotion that would constitute a serious professional setback and stigma to her career"). See also Richardson at 444 (transfer involving different job responsibilities and contact with prisoner population could constitute adverse employment action); de la Cruz v. New York City Human Resources Admin. & Dep't of Social Servs., 82 F.3d 16, 21 (2d Cir. 1996) (transfer to less elite division, with less prestige and less opportunity for advancement, without cut in pay could constitute adverse employment action); Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 116 (3d Cir. 1996) (transfer to position of same rank with same pay could constitute adverse employment action because it was arguably less desirable); Collins v. Illinois, 830 F.2d 692, 702-04 (7th Cir. 1987) (noting that "several courts have found an adverse job action, for purposes of discrimination or retaliation, in a lateral transfer even where the transfer did not result in a reduction in pay or benefits" and citing substantial authority in support). Furthermore, plaintiff disputes that she was assured that her pay would not be decreased if she resigned her supervisory position. Plaintiff was told only that the company *could possibly* maintain her current rate of pay. See Ex. 1 (Perry) at 168-69; E's. 14, 19. If plaintiff had taken that option,

44

not only would it have constituted a demotion, but plaintiff may well have been placed back on the "bump" system, which most likely would have negatively impacted her future earnings. See id.; Ex. 14; Ex. 2 (Rizzo) at 124-25.

Thus, contrary to defendant's arguments, the evidence shows that plaintiff suffered adverse employment action. Therefore, defendant is not entitled to summary judgment on plaintiff's retaliation claim.

### D. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendant argues that it is entitled to summary judgment on plaintiff's claim for intentional infliction of emotional distress [IIED] on the basis that the conduct at issue did not rise to a level that was "extreme and outrageous."[41] Contrary to defendant's argument, the evidence in this case establishes extreme and outrageous behavior.

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Appleton v. Board of Education of the Town of Stonington, 254 Conn. 205, 210 (2000). However, when reasonable minds may disagree as to whether particular conduct is extreme and outrageous, "it becomes an issue for the jury." Id.

Connecticut courts consider "racial, ethnic, religious or sexual slurs" in the workplace sufficiently extreme and outrageous to support a claim for IIED based on the "strong public policy expressed by statute in [Connecticut] prohibiting discrimination on the basis of race, sex

---

[41] Defendant does not argue that the evidence in this case is insufficient to establish the remainder of the elements required to establish a claim for IIED. See Def.Mem.

45

or national origin." Leone v. New England Communications, 2002 WL 1008470, *3 (Conn.Super., April 10, 2002, Quinn, J.). See also DeLaney v. Institute of Living, 2002 WL 1559043, *6 (Conn.Super., June 18, 2002, Shapiro, J.) (in striking plaintiff's claim for IIED in the workplace, court notes "there are no allegations concerning the use of racial, ethnic, religious or sexual slurs"). Thus, in Leone, the court found conduct including comments about plaintiff's homosexuality and "sexually offensive comments" sufficiently extreme and outrageous to state a claim for IIED under Connecticut law.

Furthermore, evidence of physical contact such as offensive touching supports "extreme and outrageous" behavior in the context of the workplace. See Cole v. Terrell Moorehouse, 2002 WL 31304178, *3 (Conn.Super., Sept. 18, 2002, Robinson-Thomas, J.) (noting that Connecticut courts "do not typically strike claims or grant judgments [on IIED claims] where physical contact has occurred"). In Cole, the court denied summary judgment on plaintiff's IIED claim where plaintiff alleged, not only that her employer criticized and demeaned her in front of her coworkers, but also that she was subjected to physical threats and contact including grabbing plaintiff's hands from a door knob and snatching papers from plaintiff's hands in an intimidating manner. See Cole at *3.

Finally, defendant's knowledge of plaintiff's vulnerability is relevant in assessing the extreme and outrageous character of the conduct:

> [T]he "extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. <u>The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.</u>" 1 Restatement (Second) of Torts § 46 comment (f).

46

Mellaly v. Eastman Kodak Company, 42 Conn. Supp. 17, 20 (extreme and outrageous conduct found where employer harassed employee about his alcoholism) (emphasis added). "Mere insults, indignities or annoyances that are not extreme or outrageous will not suffice . . . Such conduct may, however, give rise to a cause of action where the defendant is aware of the peculiar sensitivities of the plaintiff." Brown v. Ellis, 40 Conn. Supp. 165, 167 (1984). See also Lapadula v. City of Middletown, 1994 WL 450329, *2 (Conn.Super., Aug. 16, 1994, Gaffney, J.) (in an emotional distress case where "the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions," summary judgment is particularly inappropriate) (quoting Connell v. Colwell, 214 Conn. 242, 251 (1990)).

In this case, plaintiff suffered months of degrading behavior by DAI management and her coworkers. Plaintiff was constantly subjected to vulgar sexual comments, called "asshole" and "fuck," touched in an offensive manner by a female coworker, and threatened by her coworkers on at least two occasions. Despite repeated complaints to management and management's awareness that the harassment was causing plaintiff severe emotional distress, management took no action to correct the situation, but rather instructed plaintiff that she should "relax" and "ignore" the misconduct. The evidence in this case is more than sufficient to support a claim for intentional infliction of emotional distress.

### E. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Defendant argues that it is entitled to summary judgment on plaintiff's claim for negligent infliction of emotional distress [NIED] based on the Connecticut Supreme Court decision in Perodeau v. City of Hartford, 259 Conn. 729, 762-63 (2002), which held that an "individual

municipal employee may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment." See Def.Mem. at 30-34. Plaintiff disagrees that Perodeau bars plaintiff's NIED claim inasmuch as plaintiff was subjected to negligent conduct that defendant should have known would cause her emotional distress during the termination of her employment.

In Perodeau, the court precluded compensation for emotional injuries resulting from behavior in the workplace in an *ongoing* employment relationship only, based on several policy considerations including that it would have a "chilling effect" by "contribut[ing] to a less vigorous and less productive workplace" and "open the door to spurious claims" because of the "inherently competitive and stressful nature of the workplace and the difficulties surrounding proof of emotional distress." Perodeau at 757-62. The court, furthermore, noted with respect to the potential "chilling effect" that "[i]n cases involving a termination of employment, . . . an employee can no longer use the threat of a lawsuit to influence the conduct of his employer and fellow employees." Id. at 758. The court affirmed that a viable cause of action continues to exist under state law for emotional distress resulting from conduct *in* the termination process. Id. at 754-55, 762-63. See also Gupta v. City of Norwalk, 221 F.Supp.2d 282, 294 (D.Conn. 2002) ("The Connecticut Supreme Court recently clarified that a claim of [NIED] may only be brought where the plaintiff alleges that she suffered emotional distress during the termination process, and not as part of an ongoing employment relationship."); Michaud v. Farmington Community Insurance Agency, 2002 WL 31415478 (Conn.Super., Sept. 25, 2002, Beach, J.) (considering evidence of conduct that occurred at the time of alleged constructive discharge, but refusing to

48

extend to the conduct that "compelled the resignation" on the basis that termination means the ending).

Plaintiff in this case, who was constructively discharged, has a viable claim for negligent conduct that occurred *during* the termination process which defendant knew or should have known would cause plaintiff emotional distress, including the following: 1) plaintiff was subjected to continued hostility by her coworkers including being "warned" not to even *look* at Jackie Benedetto and asked "where the fuck do you think your [sic] going," 2) after informing Rizzo that she had decided to resign her supervisory position because she could no longer bear the circumstances in the aisle, Rizzo, the Department Head, told plaintiff to "stay at [her] desk" and "not to get the aisle mad," 3) plaintiff's coworkers ignored her and refused to accept a report she was required to hand out and Benedetto knocked her report in the trash as plaintiff placed it on her desk, and 4) plaintiff found a threatening note on her desk warning her that she had "better be careful in the parking lot" because "you never know when a truck is going to hit you." See Ex. 14; Ex. 1 (Perry) at 159-164. Thus, plaintiff was subjected to cruel, humiliating and threatening conduct during the termination process – conduct that would foreseeably cause a reasonable person emotional distress – precluding summary judgment on plaintiff's claim for negligent infliction of emotional distress.

**F.   DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR COMPENSATORY AND PUNITIVE DAMAGES**

Finally, defendant argues that it is entitled to summary judgment on plaintiff's claims for compensatory and punitive damages on the basis that plaintiff does not claim intentional discrimination and, therefore, cannot be awarded compensatory or punitive damages pursuant to

42 U.S.C. §1981a. See Def.Mem. at 34-36. Defendant also argues that plaintiff is not entitled to punitive damages because she cannot establish that defendant acted with "malice or reckless indifference" to her federally protected rights. See id. at 36-39. Defendant's argument is legally incorrect, and summary judgment must be denied because a factual issue exists concerning whether defendant acted with "malice or reckless indifference" in this case.

> 42 U.S.C. §1981a provides in pertinent part:
>
> In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. §§2000e-5 or 2000e-16] against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act [42 U.S.C. §§2000e-2, 2000e-3, or 2000e-16], . . ., the complaining party may recover compensatory or punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.
> . . .
>
> (b) Compensatory and punitive damages
> A complaining party may recover punitive damages under this section against a respondent . . . if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. §1981a.

Defendant's argument that plaintiff has not made a claim of "intentional" discrimination in order to permit compensatory or punitive damages in this case is specious. Plaintiff, in fact, claims discrimination on the basis of sex, sexual harassment and retaliation in violation of 42 U.S.C. §2000-e, *et seq.*, and is proceeding under disparate treatment theory. See Ex. 10. Under disparate treatment theory, proof of discriminatory intent is required, although it may be inferred and need not be proven by direct evidence. See International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977) (distinguishing claims of disparate treatment from claims of disparate impact which involve "practices that are facially neutral in their treatment of

50

different groups but that in fact fall more harshly on one group than another . . ." and do not require proof of discriminatory motive). 42 U.S.C. §1981a makes clear that, in restricting compensatory and punitive damages to some cases, Congress was drawing a distinction between claims of *intentional* discrimination – *i.e.*, claims proven under disparate treatment theory – and claims proven under *disparate impact theory* and does not require, contrary to defendant's suggestion, that plaintiff prove a standard of intentional conduct different or higher than that required to prove her underlying discrimination claim. See 42 U.S.C. §1981a (plaintiff may recover compensatory or punitive damages in action against defendant employer who "engaged in unlawful *intentional* discrimination (not an employment practice that is unlawful because of its *disparate impact*) . . ."). See also Kolstad v. American Dental Association, 527 U.S. 526, 534 (1999) ("The 1991 Act limits compensatory and punitive damages awards, [], to cases of 'intentional discrimination' – that is, cases that do not rely on the 'disparate impact' theory of discrimination.").

Furthermore, whether plaintiff may be entitled to punitive damages in this case is a question for the jury.

> Punitive damages are available under Title VII in cases where "the employer has engaged in intentional discrimination and has done so with 'malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" . . . The Supreme Court emphasized in *Kolstad* that the statutory terms "'malice' and 'reckless' ultimately focus on the actor's state of mind." Although "egregious misconduct is evidence of the requisite mental state, §1981a does not limit plaintiffs to this form of evidence . . . "What is required is evidence that the employer "discriminate[d] in the face of a perceived risk that its actions [would] violate federal law." An employer would not have the requisite state of mind if he was "unaware of the relevant federal prohibition" or acted "with the distinct belief that its discrimination is lawful."

Zimmerman v. Associates of First Capital Corporation, 251 F.3d 376, 384 (2d Cir. 2001) (citing and quoting Kolstad) (citations and quotations partially omitted). See also Farias v. Instructional

51

Systems, Inc., 259 F.3d 91, 101 (2d Cir. 2001) ("Malice and reckless indifference refer to 'the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination.'") (quoting Kolstad at 535).

In this case, the evidence establishes that DAI management was aware of federal discrimination law – defendant maintained a sexual harassment policy and provided training to supervisory employees about harassment. See Parrish v. Sollecito, – F.Supp.2d –, 2003 WL 22056956, *3 (S.D.N.Y., Sept. 9, 2003) (indicating that "[d]irect evidence that an employer acted with knowledge that the discrimination found by a jury violated federal law is not necessary to prove the requisite state of mind of the employer to justify an award of punitive damages," but rather that "general training in equal employment protocol" or "some familiarity with sexual harassment policies is sufficient to infer knowledge of the federal laws against discrimination."). Despite its awareness of federal discrimination laws, DAI management disregarded the law's requirements by ignoring plaintiff's repeated complaints of harassment and retaliation by her coworkers and failing to take any remedial action in response or even to investigate plaintiff's complaints as set forth in detail previously and in plaintiff's Statement of Facts *supra*. Defendant's lack of response indicated to plaintiff's coworkers that it, in fact, tolerated or condoned the misconduct. Management, furthermore, "blamed the victim" by instructing plaintiff to "relax" and "ignore" the harassment, suggesting that she was being too sensitive by complaining about the hostile, abusive and threatening environment and that her emotional upset was caused by her hysterectomy, not her coworkers' behavior. Under these circumstances, whether defendant acted with malice or with reckless disregard for plaintiff's rights under Title VII and, therefore, whether plaintiff is entitled to punitive damages is a factual issue that cannot

be decided on summary judgment. See Pavon v. Swift Transportation Co., Inc., 192 F.3d 902, 909 (9th Cir. 1999) (upholding punitive damages award where defendant's management was aware of discriminatory conduct, but "took no meaningful steps to stop it" finding that the jury "could have concluded that [defendant] did not believe [plaintiff's] allegation and never seriously investigated the situation" or that "[defendant's] refusal to investigate stemmed from its blame-the-victim mentality, wherein it wrongfully perceived [plaintiff] as the problem, labeled him a troublemaker and terminated him."); Knowlton v. Teltrust Phones, Inc., 189 F.3d 1177, 1187 (10th Cir. 1999) (reversing directed verdict and remanding for consideration of issue of punitive damages by jury where evidence supported that defendant's management was aware of hostile work environment but was unresponsive to plaintiff's complaints).

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment must be denied.

THE PLAINTIFF, CAROL PERRY

BY: _____
KATHRYN EMMETT
Federal Bar No. ct05605
CHRISTINE CAULFIELD
Federal Bar No. ct19115
Emmett & Glander
45 Franklin Street
Stamford, CT 06901
(203) 324-7744

53

## CERTIFICATION

      This is to certify that a copy of the foregoing was mailed, via federal express, postage prepaid, this 22nd day of October, 2003, to:

Kristin Corcoran, Esq.
Kenneth M. Ludovico, Jr., Esq.
Doctor's Associates Inc.
325 Bic Drive
Milford, CT  06460.3059

                                                                       Kathryn Emmett