IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CAROL PERRY, | : Case No.: 3:01 CV 1828 (CFD) |
| Plaintiff, | : |
| vs. | : |
| DOCTOR'S ASSOCIATES INC., | : December 4, 2003 |
| Defendant | : |

DEFEDANT'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................*i*

I. PLAINTIFF'S TITLE VII CLAIM CANNOT SURVIVE AND SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF THE DEFENDANT...................................1

   A. Plaintiff's same-sex harassment claim is an artificial construct which the court must reject and summary judgment should be granted.................................1

   B. Conduct does not meet Title VII's requirements for hostile work environment and summary judgment should be granted..............................................2

   C. Defendant's response was remedial, timely and designed to remedy plaintiff's complaints................................................................3

II. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM CANNOT SURVIVE AND SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF THE DEFENDANT...................................................................4

   A. Plaintiff makes no allegation that slurs of any kind were directed at her....................4

   B. Plaintiff cannot substantiate a claim for intentional infliction of emotional distress based on the limited and benign evidence of physical contact.........................5

   C. Plaintiff had no known vulnerability that was the subject of exploitation....................5

III. PLAINTIFF'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS IS CLEARLY PRECLUDED AND SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF THE DEFENDANT...................................................................6

IV. PLAINTIFF'S CLAIM FOR COMPENSATORY AND PUNITIVE DAMAGES CANNOT SURVIVE UNDER TITLE VII AND SUMMARY JUDGMENT SHOULD BE GRANTED..........................................................................7

   A. Plaintiff is not entitled to compensatory or punitive damages and summary judgment should be granted....................................................7

   B. Plaintiff is not entitled to punitive damages and summary judgment should be granted....................................................................9

# TABLE OF AUTHORITIES

## CASES

### Federal Cases

Abate v. Circuit-Wise, Inc., 130 F. Supp. 2d 341 (D.Conn. 2001) .................................................. 5

Bianchi v. City of Philadelphia, 183 F. Supp. 2d 726 (E.D.Pa. 2002) ........................................... 2

Bibby v. Philadelphia Coca Cola Bottling Company, 260 F.3d 257 (3d Cir. 2001) ...................... 2

Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310 (2d Cir. 1999) ..................................... 2

Dobrich v. General Dynamics Corp., 106 F.Supp. 2d 386 (D.Conn. 2000) .................................. 9

Farias v. Instructional Systems, Inc., 259 F.3d 91 (2d Cir. 2001) ................................................. 9

Harris v. Forklift System, Inc., 510 U.S. 17 (1993) ...................................................................... 2

Heller v. Columbia Edgewater Country Club, 195 F. Supp. 2d 1212 (D.Or. 2002) ................. 1,3

International Brotherhood of Teamsters v. United States, 431 U.S 324 (1977) ........................... 8

Kolstad v. American Dental Association, 527 U.S. 526 (1999) ................................................ 7,9

Nichols v. Azteca Rest. Enter., Inc., 256 F.3d 864 (9th Cir. 2001) ................................................ 1

Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998) ........................................... 2,3

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) ...................................................................... 1

Schwapp v. Town of Avon, 118 F.3d 110 (2d Cir. 1997) .............................................................. 2

### State Cases

Brown v. Ellis, 40 Conn.Supp. 165 (Conn.Super. 1984) ................................................................ 6

Brittell v. Dept. of Corrections, 247 Conn. 148 (1998) ................................................................. 4

Burr v. Howell, No. CV020464225S, slip op. (Conn.Super.Ct. June 25, 2003 ............................. 4

i

Cole v. Terrell Moorehouse, et al., No. CV990427337S, slip op. (Conn.Super.Ct. Sept. 18, 2002)..................................................................................................................................5

DeLaney v. Inst. of Living, No. CV020097157S, slip op. (Conn.Super.Ct. June 18, 2002)..................................................................................................................................5

Leone v. New England Communications No. CV10509752S, slip op. (Conn.Super.Ct. Apr. 10, 2002)..................................................................................................................................4

Mellaly v. Eastman Kodak Company, 42 Conn.Supp. 17 (Conn.Super. 1991).......................6

Michaud v. Farmington Community Insurance Agency, No. CV010806951S, slip op. (Conn.Super.Ct. Sept. 25, 2002).....................................................................................6,7

Perodeau v. City of Hartford, 259 Conn. 729 (2002) ................................................... 6,7

I. **PLAINTIFF'S TITLE VII CLAIM CANNOT SURVIVE AND SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF THE DEFENDANT**

Plaintiff's case relies on an eye-popping recitation of "facts". Even accepting these facts as true, the inferences required to create a legally cognizable injury are so attenuated that judgment in favor of the defendant as a matter of law is appropriate.

**A. Plaintiff's same-sex harassment claim is an artificial construct which the court must reject and summary judgment should be granted.**

Courts recognize as actionable under Title VII discrimination involving "sex stereotyping", i.e. where the plaintiff is subjected to discriminatory harassment because he or she fails to conform with gender stereotypes. In relevant cases, a male plaintiff is harassed because his mannerisms and deportment are considered feminine[1] whereas a female plaintiff's are considered too masculine.[2] In *Price Waterhouse v. Hopkins,* the Court found it likely that plaintiff accounting firm engaged in unlawful sex stereotyping when it denied the female defendant partnership, one partner commenting that Hopkins could improve her chances for partnership if she would "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." 490 U.S. 228, 235 (1989).

Neither the facts nor the reasons supporting these decisions exists here. Plaintiff attempts to carve out an avenue for recovery by alleging discriminatory harassment not because she *failed* to conform to female stereotypes, but because she *did* conform to female stereotypes. Plaintiff insists that her female subordinates harassed her not because she displayed traits that were stereotypically masculine, but because she was stereotypically feminine and "lady-like". (Pl.'s Memo. at p. 2).

---

[1] In *Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864 (9th Cir. 2001), the male employee was harassed by co-workers who referred to him as "she" and "her" because they considered him too effeminate.

This newly stated theory, that sensitivity, moodiness, emotionality and instability are stereotypically female, has no basis in case law. Title VII's prohibition of harassment "because of sex" is exclusive and exhaustive. For example, it does not proscribe harassment or discrimination because of sexual orientation even on facts more egregious than those alleged by plaintiff. (*Bianchi v. City of Philadelphia*, 183 F. Supp. 2d 726 (E.D.Pa. 2002); *Bibby v. Philadelphia Coca Cola Bottling Company*, 260 F.3d 257 (3d Cir. 2001)). Nor does Title VII, any Connecticut, Second Circuit or United States jurisprudence proscribe harassment of a woman on the basis that she conforms to societal norms of feminine conduct.

The implications of plaintiff's theory are obvious and far reaching and obliges the court to decline to adopt her rationale for finding actionable sexual harassment. To rule otherwise would render Title VII a nullity, an abstraction and transform it into the "general civility code" the Supreme Court warned against in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998). Since plaintiff's sexual harassment claim fails, summary judgment should be granted.

**B. Conduct does not meet Title VII's requirements for hostile work environment and summary judgment should be granted.**

Title VII requires showing that "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25, (Ginsburg, J., concurring).[3] Plaintiff must show the alleged conduct was severe or pervasive and comprised of "more than a few isolated incidents of enmity." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

---

[2] In *Heller v. Columbia Edgewater Country Club*, 195 F. Supp. 2d 1212 (D.Or. 2002), the female employee, a lesbian, was asked by her female manager whether she "wore the pants" in her relationship and was criticized for wearing "faggy shoes" or "men's shoes".

[3] *See also Brennan v. Metropolitan Opera Assn, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("[A]n environment which is equally harsh for both men and women ... does not constitute a hostile working environment under the civil rights statutes.")

2

At no point in her pleadings does plaintiff present evidence that members of the opposite sex or similarly "lady-like" employees were treated differently than any other employee.[4] Further, the conduct alleged simply does not amount to discrimination under Title VII. The Supreme Court has clearly stated that "we have never held that workplace harassment ... is automatically discrimination because of sex merely because the words used have sexual content or connotations," and plaintiffs must "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex." *Oncale*, 523 U.S. at 80 - 81; s*ee also Heller*, 195 F. Supp. 2d at n. 9 ("there are certain words that...may be utilized during an argument to convey a range of antagonistic emotions having little to do with gender or sex and...would not be ...harassment that is actionable under Title VII."). Here, plaintiff's primary allegations are that her subordinates used strong language and engaged in conversations having sexual connotations. Even viewing the conduct as a whole,[5] it is still insufficient to support the existence of a "hostile workplace."

### C. Defendant's response was remedial, timely and designed to remedy plaintiff's complaints.

Defendant attempted to correct the problems plaintiff was experiencing by offering alternative employment opportunities within the company and at the same rate of pay. Connecticut jurisprudence views defendant's actions as remedial rather than retaliatory. "[I]n

---

[4] In fact, the record offers factual support that plaintiff's gender was irrelevant to her subordinates and in no way motivated their conduct. *See* Perry Depo. at 65-66 ("She told me I shouldn't be a supervisor"), 110 (A: "At that point they had no respect for me;" Q: "Did they have no respect for you because you were a woman, or because you were their supervisor?" A. "Supervisor;" 126 ("She [Jackie Benedetto] just lost respect;") *See also* Perry Depo. at 49; 92; 104-105; 125; 138;144; 153; 170 (plaintiff repeatedly indicating that the treatment she received was not based on her gender.)

[5] Plaintiff alleges that strong language was frequently used within her range of hearing. However, she recounts six specific incidents that form the basis of her suit: one incident where one of her subordinates brought a catalogue in before her twenty-fifth (25th) wedding anniversary that advertised condoms; one incident where one subordinate stated that she was not wearing underwear; one incident where a subordinates had a photograph of a partially clad male coworker; one incident where one of her female subordinates rubbed her shoulders; an incident where a female employee slapped her own behind as if to say, "kiss my bottom;" and the use of the term "rat bastard" in the aisle directed at telephones after her subordinates spoke to franchisees.

3

circumstance such as these ... relocation of the victim away from the hostile work environment is a reasonable remedial response so long as the victim's transfer, viewed objectively and under all circumstances, fairly accommodates the legitimate interests and concerns of the victim." *Brittell v. Dept. of Corrections*, 247 Conn. 148, 177 (1998).

Since plaintiff's claims are insufficient to support a "hostile work environment" claim, summary judgment should be granted.

## II. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM CANNOT SURVIVE AND SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF THE DEFENDANT

The evidence presented in this case in no way establishes the requisite extreme and outrageous conduct necessary to prevail on a claim for intentional infliction of emotional distress under Connecticut law. The cases and legal reasoning relied on by plaintiff in her brief in opposition to defendant's motion for summary judgment are easily distinguishable from the evidence in this case.

### A. Plaintiff makes no allegation that slurs of any kind were directed at her.

Plaintiff's contention that courts consider "racial, ethnic, religious or sexual slurs" in the workplace sufficiently extreme and outrageous is unpersuasive. There is no allegation that slurs of any kind were leveled at plaintiff, only that inappropriate language was used in her presence. The exact definition of what constitutes a slur is elusive, but case law bears out society's basic understanding. Words and phrases that carry a discriminatory connotation on its face, such as comments relating directly to an individual's race, ethnicity, religion, or sexual orientation have been treated as slurs. *See Leone v. New England Communications*, No. CV10509752S, slip op. (Conn.Super.Ct. Apr. 10, 2002) (referring to Italian-American plaintiff as "Dago", "Wop", "Gimabroni" and remarking about his homosexuality.); *Burr v. Howell*, No. CV020464225S, slip

4

op. Jun. 25, 2003, (copy of decision attached hereto) (referring to African American plaintiff as "nigger").

Plaintiff points out that the court in *DeLaney v. Institute of Living* struck plaintiff's claim for intentional infliction of emotional distress because there were, "no allegations concerning the use of racial, ethnic, religious, or sexual slurs." No. CV020097157S, slip op. (Conn.Super.Ct. June 18, 2002). Summary judgment should also be granted here. Plaintiff's complaint contains no allegations to support such a claim. The language that plaintiff would like this court to construe as "slurs" simply does not rise to that level. Compl. at ¶ 11, 15, 23, 45. This language, while it may be deemed inappropriate, does not relate to plaintiff's sex and is clearly not discriminatory.

### B. Plaintiff cannot substantiate a claim for intentional infliction of emotional distress based on the limited and benign evidence of physical contact.

Plaintiff asserts that evidence of physical contact such as offensive touching supports "extreme and outrageous" behavior in the context of the workplace. *Cole v. Terrell Moorehouse et al.*, No. CV990427337S, slip op. (Conn.Super.Ct. Sept. 18, 2002). Plaintiff's reliance on the reasoning in an unpublished, Superior Court decision is unpersuasive in light of this court's holding in *Abate v. Circuit-Wise, Inc.* 130 F. Supp. 2d 341 (D.Conn. 2001). In granting the motion to dismiss, the court in *Abate* was not compelled to find the alleged behavior "extreme and outrageous" where an employee was touched by his supervisor on the face, mid-section, and genital area simply because evidence of offensive touching was presented. The alleged touching in Ms. Perry's case does not rise to this level and should not be analyzed any differently.

### C. Plaintiff had no known vulnerability that was the subject of exploitation.

Plaintiff has failed to make a showing of conduct sufficiently extreme and outrageous to satisfy the third prong of the test for intentional infliction of emotional distress. To address this weakness, plaintiff has alleged that she was vulnerable and that defendant's exploitation of her

5

vulnerability was extreme and outrageous. This claim is flawed as plaintiff fails to address <u>any</u> knowledge on the part of defendant of any particular vulnerability. Nor does she state what vulnerability she allegedly suffered. (*Cf. Mellaly v. Eastman Kodak Company* where plaintiff was a recovering alcoholic. *See also Brown v. Ellis*, 40 Conn. Supp. 165 (Conn.Super.Ct. 1984) (plaintiff suffered from acrophobia.)).

Since plaintiff has failed to claim or demonstrate any so-called vulnerability, or any knowledge on the part of defendant regarding that vulnerability, summary judgment should be granted.

### III. PLAINTIFF'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS IS CLEARLY PRECLUDED AND SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF THE DEFENDANT

Plaintiff's sole basis for arguing that her claim for negligent infliction of emotional distress should survive is rooted in the interpretation of the phrase, "during the termination of her employment." Effectively conceding that they face an insurmountable wall of jurisprudence directing that summary judgment be granted in instances such as this, plaintiff has chosen to rely on an appeal to the sensitivity of the court.

There is simply no support for plaintiff's contentions. The cases relied on in her brief do not extend the tort to behavior in the context of an ongoing employment relationship. The distinction between termination and constructive discharge is given little attention. In *Michaud v. Farmington Community Insurance Agency*, the court conceded that "conduct which led to the plaintiff's physically absenting herself from the job was actionable and socially unacceptable." No. CV010806951S, slip op. (Conn. Super.Ct. Sept. 25, 2002). The court declined to adopt plaintiff's requested interpretation of *Perodeau v. City of Hartford,* that, " because the claim is constructive discharge, the termination process in effect extends through much of the course of

6

the employment relationship, so that it is impossible to draw a bright line between conduct occurring in the course of the employment relationship and conduct occurring in the termination of employment." 259 Conn. 729 (2002). In granting defendant's motion for summary judgment, the court proclaims, "I do not find that *Perodeau* and its predecessors should be read so broadly or permissively." *Michaud*, No. CV010806951S at *3.

Because the state of the law is well defined, requiring an actual termination of employment, summary judgment should be granted as to plaintiff's claim for negligent infliction of emotional distress.

## IV. PLAINTIFF'S CLAIM FOR COMPENSATORY AND PUNITIVE DAMAGES CANNOT SURVIVE AND SUMMARY JUDGMENT SHOULD BE GRANTED

Examining plaintiff's claim for compensatory and punitive damages, it fails as a matter of law and summary judgment should be granted.

### A. Plaintiff is not entitled to compensatory or punitive damages under title vii and summary judgment should be granted.

Plaintiff is proceeding under a theory of disparate treatment. Should she convince the court that the treatment she received was disparate, she would still not be entitled to compensatory or punitive damages because she cannot meet the required burden for compensatory and punitive damages; intentional discrimination.

Plaintiff misapplies *Kolstad v. American Dental Associates* in her motion in opposition. 527 U.S. 526 (1999). *Kolstad* specifically stated that "compensatory damages are available only where the employer has engaged in intentional discrimination." *Id.* at 535. Punitive damages are only available "to a subset of those involving intentional discrimination" where the employer acts with "malice or reckless indifference to the plaintiff's federally protected rights." *Id.* Only upon a finding that the treatment was *intentional* can the court proceed to an examination of

7

whether malice or reckless indifference to federally protected rights occurred. In the current matter, no facts exist that indicate intentional discrimination, nor does plaintiff make any claim of intentionality in her complaint.

Perhaps recognizing this weakness, plaintiff erroneously states, "proof of discriminatory intent is required, although it may be inferred and need not be proven by direct evidence." Pl. Mot. at 50 (*citing International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15 (1977)). The actual quote is "[P]roof of discriminatory motive is *critical*, although it can in some situations be inferred from the mere fact of *differences in treatment.*" *Id.*, (emphasis added).

Clearly, if a discriminatory motive cannot be identified, there must be some differences in treatment. Here, no differences in treatment are being alleged, nor has the plaintiff identified any discriminatory motive.

As stated *infra,* nowhere in her initial complaint or the opposition to summary judgment, does plaintiff claim that she was treated differently than any other employee. She does not allege, for example, that another person went to management and received different treatment, nor does she allege in her complaint that the treatment she received was because she was a woman.

Plaintiff attempts, in her opposition, to create out of whole cloth a discriminatory motive by claiming she was "too ladylike." Plaintiff's argument relies on cases out of Oregon, Pennsylvania, the Ninth Circuit, the Third Circuit, and the First Circuit. Pl. Opposition at 20-22. In all these cases, the court has upheld the right of a plaintiff to make a claim where the plaintiff *does not conform to stereotypes of his or her gender.* Nothing in those cases indicates that relief can be sought for being "too stereotypical," if such a state exists.

8

Reading plaintiff's opposition, the court might believe the defendant makes some argument that a claim of sexual harassment is precluded where there is same-sex harassment. Defendant makes no such claim. Defendant only argues that plaintiff has shown no sexual harassment in this case, and the transparent attempt to invent a last minute discriminatory motive fails.

Plaintiff has failed to present any *intentional* discriminatory motive and she is not entitled to compensatory or punitive damages. Summary judgment should be granted.

### B. Plaintiff is not entitled to punitive damages under title vii and summary judgment should be granted.

Plaintiff's claim that defendant maliciously and with reckless indifference discriminated against her, therefore entitling her to punitive damages is an incorrect interpretation of 42 U.S.C. 1981a requirements for punitive damages:

> The Supreme Court has recently clarified the federal standard for imposing punitive damages: "Punitive damages [under Title VII] are limited ... to cases in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Farias v. Instructional Systems, Inc.*, 259 F.3d 91, 101 (2d Cir. 2001) (*citing Kolstad v. American Dental Association*, 527 U.S. 526, 529-30 (1999)).
>
> Malice and reckless indifference refer to "the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id.* at 101 (citing *Kolstad v. American Dental Association*, 527 U.S. 526, 535 (1999)).

In *Dobrich v. General Dynamics*, the court found that where the defendant had written procedures establishing an equal employment opportunity program and employee complaint procedures, staffed an equal opportunity office, installed an orientation program, issued an employee handbook describing the company's policy against sexual harassment, posted notices and memoranda of the policy, and provided supervisors with equal employment opportunity

9

training, no evidence existed that the defendant consciously acted in derogation of federal law. 106 F. Supp. 2d 386 (D.Conn. 2000). Plaintiff does not dispute that DAI has written procedures establishing an affirmative action program, an employee complaint procedure, a human resources office designed to deal with employee complaints, sexual harassment training for all supervisors, an employee handbook describing the company's policy against sexual harassment, and posted notices of the policy.

Since these procedures are in place, defendant clearly did not consciously act in derogation of federal law, even where it's "actions may not have been effective in eliminating the harassment" *Id.* Plaintiff, therefore, is ineligible to receive punitive damages as a matter of law. *Id.* at 395. Therefore, summary judgment for the claim of punitive damages should be granted.

Dated this 4th day of December, 2003

*[signature]*
Doctor's Associates Inc.
325 Bic Drive
Milford, CT 06460
Federal Bar No. CT 13892
Kristin L. Corcoran

Not Reported in A.2d  
35 Conn. L. Rptr. 95  
(Cite as: 2003 WL 21675848 (Conn.Super.))

Page 1

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,  
Judicial District of New Haven.

Ronald BURR,  
v.  
Todd HOWELL d/b/a Winter Ridge, LLC.

No. CV020464225S.

June 25, 2003.

Parrett Porto Parese & Colwell PC, Hamden, for Ronald Burr.

Michael Stone, New Haven, for Todd Howell.

ARNOLD, J.

*1 The plaintiff has moved to strike the Eleventh Count of the defendant's Counterclaim dated October 9, 2002 for the reason that it fails to state a claim upon which relief may be granted. Specifically, the plaintiff claims that the defendant has failed to set forth a claim for the intentional infliction of emotional distress.

The plaintiff alleges that on or about August 26, 2001, the plaintiff entered into a written employment agreement with the defendant, Todd Howell d/b/a Winter Ridge L.L.C. Pursuant to the terms of said agreement, the plaintiff was hired by the defendant for a period of no less than three years and was to perform certain job functions as specified in the agreement, for which the plaintiff was to be compensated on a biweekly basis.

On or about March 11, 2002, the plaintiff alleges that the defendant unilaterally terminated the employment contract without cause, and subsequent thereto, the plaintiff filed his action in court. The plaintiff's action alleges that the defendant breached the employment contract and further alleges various claims of misrepresentation and violation of the Connecticut Unfair Trade Practices Act.

On October 11, 2002, the defendant filed his answer and affirmative defenses to the plaintiff's claims, as well as, a multi-count counterclaim alleging *inter alia,* breach of contract, misrepresentation, conversion and intentional infliction of emotional distress. The Eleventh Count of the defendant's counterclaim, to which this motion to strike is directed, is the count alleging intentional infliction of emotional distress. In said Eleventh Count the defendant realleges claims of breach of contract, misrepresentation, and conversion. The defendant in addition alleges that the plaintiff subjected the defendant to "massive financial expense" by improperly incurring debt for the defendant in the amount of $50,765.69 from a "supplier," as well as, a claim that the plaintiff Burr referred to the defendant Holland, who is of African-American descent as a "nigger." The defendant claims that the plaintiff's actions as described were "extreme and outrageous" and were intentional. The defendant claims that the actions of the plaintiff were likely to cause the defendant emotional distress and that the emotional distress was "severe." The defendant alleges that his reputation in the business community was damaged, and that he suffered embarrassment and annoyance.

I

The court first reviews the legal standards regarding a motion to strike. "The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint ... to state a claim upon which relief can be granted." *Mingachos v. CBS, Inc.,* 196 Conn. 91, 108, 491 A.2d 368 (1985). A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings" (Emphasis omitted.) *Id.* "A motion to strike is properly granted where a plaintiff's complaint alleges legal conclusions unsupported by facts." *Id.* "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." *Gordon v. Bridgeport Housing Authority,* 208 Conn. 161, 170, 544 A.2d 1185 (1988). A motion to strike "is to be tested by the allegations of the pleading demurred to, which cannot be enlarged by the assumption of any fact not therein alleged." (Internal quotation marks and citations omitted.) *Alarm Applications Co. v. Simsbury Volunteer Fire Co.,* 179 Conn. 541-50, 427 A.2d 822 (1980).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
35 Conn. L. Rptr. 95
(Cite as: 2003 WL 21675848 (Conn.Super.))

Page 2

*2 Upon deciding a motion to strike, the trial court must construe the "plaintiff's complaint in [a] manner most favorable to sustaining its legal sufficiency." *Bouchard v. People's Bank,* 219 Conn. 465, 471, 594 A.2d 1 (1991). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." *Mingachos v. CBS, Inc., supra,* 196 Conn. 108-09. However, if the [plaintiff] has alleged mere conclusions of law unsupported by the requisite facts, the motion to strike should be granted. *Cavallo v.. Derby Savings Bank,* 188 Conn. 281, 285, 449 A.2d 986 (1982). The legal sufficiency of a count which alleges the intentional infliction of emotional distress may be tested by a motion to strike. *Dollard v. Board of Education,* 63 Conn.App. 550, 551 n. 2, 777 A.2d 714 (2001).

The legal standard for intentional infliction of emotional distress is well settled and set forth in *Appleton v. Board of Education,* 254 Conn. 205, 210, 757 A.2d 1059 (2000), wherein the court stated: "In order for the plaintiff to prevail for a case for liability under ... [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted). See also, *Chasin- Hoxley v. New Haven Jewish Community Council,* Superior Court, judicial district of New Haven at New Haven, Docket No. CV01-0454743 (September 19, 2002) (Arnold, J.). The plaintiff argues that the defendant in the present matter has failed to plead the requisite elements of the second and fourth prongs of the *Appleton* standard, in that the defendant has failed to allege that the plaintiff's behavior was extreme and outrageous, and that the defendant has failed to identify how or in what manner the emotional distress was severe.

"Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. New Haven,* 220 Conn. 225, 267, 597 A.2d 807 (1991). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Bell v. Board of Education,* 55 Conn.App. 400, 410, 739 A.2d 321 (1999). "Only where reasonable minds disagree does it become an issue for the jury." *Appleton v. Board of Education, supra.* "Liability has been found only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, 'Outrageous!' ... Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form a basis for an action based upon intentional infliction of emotional distress." *Id.* at 210-11.

*3 "It is clear that individuals in the workplace should reasonably expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace. Such individuals reasonably should expect to be subject to other vicissitudes of employment such as workplace gossip, rivalry, personality conflicts and the like." *Perodeau v. Hartford,* 259 Conn. 729, 757, 792 A.2d 552 (2002). "Individuals reasonably should expect to be subject to routine employment-related conduct, including performance evaluation, both formal and informal, decisions related to such evaluations, such as those involving transfer, demotion, promotion and compensation; similar decisions based on the employer's business needs and desires, independent of the employee's performance, and disciplinary or investigatory action arising from actual or alleged employee misconduct." *Id.*

A review of case law demonstrates that certain allegations have been deemed not to be extreme and outrageous conduct. In *Stepney v. Devereaux Foundation,* Superior Court, judicial district of Litchfield, Docket No. 65885 (November 1, 1995) (Pickett, J.), the court struck the plaintiff's claim that alleged the defendant "yelled at, screamed at

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
35 Conn. L. Rptr. 95
(Cite as: 2003 WL 21675848 (Conn.Super.))

Page 3

and used abusive and foul language to try to dissolve the plaintiff from seeking benefits under the Workers' Compensation Act." Similarly, in *Scandura v. Friendly Ice Cream Corporation,* Superior Court judicial district of Hartford, Docket No. 529109 (July 5, 1994) (Hennessey, J.), the plaintiff alleged that her supervisor engaged in extreme and outrageous conduct "by making her furnish daily sales projections for the restaurant she managed, disallowing her from taking a scheduled vacation for which she had made airline reservations, and ridiculing her 'unjustifiably ... often obscenely,' and in a manner which insulted her integrity, both before and after he learned that she suffered from a medical condition that made her particularly susceptible to emotional distress."

"[T]here is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain an action. The court looks to the specific facts and circumstances of each case in making its decision ... However, [a] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional acts wholly lacking in social utility ... [T]hose cases in the employment context that have granted motions to strike because the allegations do not sufficiently describe extreme and outrageous behavior, are more often those that allege little more than that the plaintiff was terminated without just cause." (Citations omitted; internal quotation marks omitted.) *Rosenberg v. Meriden Housing Authority,* Superior Court, judicial district of New Haven at New Haven, Docket No. 377376 (October 29, 1999, Licari, J.); *Leone v. New England Communications,* Superior Court, judicial district of New Britain, Docket No. 509752 (April 10, 2002) (Quinn, J.), 32 Conn. L. Rptr. 72. The plaintiff's claims regarding breach of contract, misrepresentation, conversion and the like, do not meet the level of extreme and outrageous conduct.

*4 However, the question remains whether the racial, and/or ethnic slur specifically alleged was extreme and outrageous conduct. Cases decided in different states in the United States were reviewed in a Superior Court decision by Corradino, J. See, *Denault v. CT. General Life Ins. Co.,* Superior Court, judicial district of Ansonia/Milford at Milford, No. CV 95-0050418 (June 29, 1999, Corradino, J.); discussion of employment discrimination and remarks regarding employee's sexual preferences. Several Connecticut Superior Court cases have found racial slurs, or comments about national origin to be extreme and outrageous conduct. See, *Torres v. Armstrong,* Superior Court, judicial district of New Haven at New Haven, No. CV 99-0427057 (Sept. 6, 2001, Levine, J.); *Denault v. CT General Life Ins. Co., supra; Cummings v. D'Oyen,* Superior Court, judicial district of Fairfield at Fairfield, No. CV 94-318310S, (May 3, 1996, Ballen, J.); *Broadnax v. City of New Haven,* Superior Court, judicial district of New Haven at New Haven, CV00-4412193 (May 16, 2000, Levin, J.); *Leone v. New England Communications, supra,* 32 Conn. L. Rptr. 72.

"In considering whether such conduct is extreme or outrageous, the court notes that there is a strong public policy expressed by statute in our state prohibiting discrimination on the basis of race, sex or national origin. General Statutes § 46a-58(a) provides: 'It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person in deprivation of any rights privileges or immunities, secured or protected by the constitution or laws of this state or of the United States, on account of religion, national origin, alienage, blindness of physical disability.' These comments, if alleged with other facts in the context of a discrimination case, would be adequate to state such a cause of action. The United States Supreme Court has stated that '[a]n action to redress racial discrimination may also be likened to an action for defamation or intentional infliction of emotional distress. Indeed the contours of the latter tort are still developing, and it has been suggested that under the logic of the common law development of a law of insult and indignity, racial discrimination might be treated as a dignatory tort.' " *Curtis v. Loether,* 415 U.S. 189, 196, n. 10, 94 St.Ct. 1005, 39 L.Ed.2d 260 (1974). *Leone v. New England Communications, supra,* Superior Court, judicial district of New Britain, Docket No. 509752 (April 10, 2002) (Quinn, J.).

The facts alleged in the defendant's counterclaim are that plaintiff "referred" to the defendant as a "nigger." The defendant has not claimed that the actions of the plaintiff are a case of employment discrimination. What is unclear when reading the entire counterclaim is whether the plaintiff ever used this slur in the defendant's presence, and

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
35 Conn. L. Rptr. 95
**(Cite as: 2003 WL 21675848 (Conn.Super.))**

Page 4

whether this was a single act or was repeated on several occasions over a period of time. On any occasion, an alleged racial slur of "nigger" is harmful and hurtful. If, in fact, the plaintiff did utter the slur, it appears to have been isolated in the context of a heated breakdown of a business relationship between the parties, which is not claimed to have been racially motivated. The defendant has not alleged any pattern of racially motivated conduct by the plaintiff. The conduct described in the Eleventh Count of the defendant's counterclaim while distressing and hurtful, is less than "extreme" and "outrageous" in nature. *Dollard v. Board of Education,* 63 Conn .App. 550, 777 A.2d 714 (2001); *Muniz v. Kravis,* 59 Conn.App. 704, 710, 757 A.2d 1207 (2000); *Chieffalo v. Norden Systems, Inc.,* 49 Conn.App. 474, 714 A.2d 1261 (1998).

\*5 While this court does not endorse or condone the behavior of the plaintiff, as alleged by the defendant in his counterclaim, especially in light of our strong public policy against discrimination, it is not so outrageous or atrocious to meet the standard of unacceptability required for the tort of intentional infliction of emotional distress. "This tort must be strictly policed to avoid turning ordinary life and its insults and ignorant behavior into an endless and uncontrollable pool for litigation." *Denault v. Ct. General Life Ins. Co., supra.*

As the plaintiff's alleged conduct does not rise to the level of the extreme and outrageous conduct required to meet the second prong of the four-prong test required to maintain an action for the intentional infliction of emotional distress, the court need not decide whether the defendant suffered severe emotional distress. See *Appleton v. Board of Education, supra,* 254 Conn. 205.

Accordingly the motion to strike the Eleventh Count of the Defendant's Counterclaim is hereby granted.

2003 WL 21675848 (Conn.Super.), 35 Conn. L. Rptr. 95

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent postage prepaid, on this 4th day of December, 2003, to:

> Kathyrn Emmett
> Emmett & Glander
> 45 Franklin Street
> Stamford, CT  06901 – 1308

*[signature]*
Kristin Corcoran